Selenia S. **GARZA**, et al., Appellants,

v.

**PROLITHIC ENERGY COMPANY, L.P.**, et al., Appellees.

and

Selenia S. **Garza**, et al., Appellants,

v.

**Acock Engineering & Associates**, et al., Appellees.

Nos. 04–04–00792–CV, 04–04–00793–CV.

Court of Appeals of Texas, San Antonio.

Jan. 25, 2006.

Rehearing Overruled March 14, 2006.

James K. Jones, Jr., Adan A. Gonzalez III, Jones & Gonzalez, P.C., Laredo, Kirk W. Evans, W. Mark Cotham, Cotham, Harwell & Evans, P.C., Houston, for appellants.

Clayton J. Hoover, Corpus Christi, John F. Carroll, Law Office of John Carroll, Jon Christian Amberson, Jon Christian Amberson, P.C., San Antonio, Jose Luis Garza, Law Office of Jose Luis Garza, Rio Grande City, for appellees.

David Garcia, Edinburg, Frank R. Nye, Law Office of Frank R. Nye, Jr., Lori Peterson, Isabel Trevino, Law Office of Isabel Trevino, Rio Grande City, Elma P. Marsh, Toufic Nicolas, Nicolas, Morris, Gilbreath & Smith, L.L.P., Corpus Christi, Beckham, Rector & Eargle, L.L.P., Pennington, Hill & Baker, L.L.P., Stewart David Greenlee, Fort Worth, Lori Kvapil, David P. Poole, Hunton & Williams, P. Jefferson Ballew, Jr., Thompson & Knight, L.L.P., Dallas, Norman West Harris III, Birmingham, AL, Patty Harris, Charlottesville, VA, Pressley Harris Peters, Atlanta, GA, Jeffrey M. Neff, Tucson, AZ, Kathryn B. Enoch, Austin, Rodney D. Moore, South Padre Island, for other.

Sitting: CATHERINE STONE, Justice, KAREN ANGELINI, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by REBECCA SIMMONS, Justice.

Vicente Saenz and Inocencia de Saenz executed two separate deeds in favor of J.B. Claypool and Homer P. Lee. The deed in favor of J.B. Claypool is entitled "Royalty Contract," while the deed in favor of Homer P. Lee is entitled "Mineral Deed." This appeal challenges a summary judgment construing the mineral and royalty interest language contained in those deeds. The operators of the wells responsible for paying royalties to the appropriate parties interpled the funds and sought a judicial interpretation of the deeds. The trial court construed the deeds in favor of the parties claiming ownership as the grantees of the deeds (the "Claypool/Lee Claimants"). The parties claiming ownership as the grantors of the deeds (the "Saenz Claimants") appeal the summary

judgment, contending: (1) the summary judgment fails to give effect to all of the terms of the deeds: (2) the *Duhig* rule does not apply to the deeds; and (3) the trial court erred in admitting the Claypool/Lee Claimants' expert title opinions. We affirm the trial court's judgments.

## BACKGROUND

In 1938, Vicente Saenz and Inocencia de Saenz executed a Royalty Contract[1] in favor of J.B. Claypool. The Contract conveyed "an undivided one-half (1/2) interest in and to all of the oil, gas and other minerals in and under the [Property] ... Together with the rights of ingress and egress at all times for the purpose of taking said minerals." The Contract further provided:

It is distinctly understood and herein stipulated that said land is under an Oil and Gas Lease made by Grantor providing for a royalty of 1/8th of the oil and certain royalties or rentals for gas and other minerals and that Grantee herein shall receive One-half (1/2) of the royalties and rentals provided for in said lease insofar only as said lease covers the land hereinabove described; but he shall have no part of the annual rentals paid to keep said lease in force until drilling has begun.

It is further agreed that Grantee shall have no interest in any bonus money received by the Grantor in any future lease or leases given on said land, and that it shall not be necessary for the grantee to join in any such lease or leases so made; That Grantee shall receive under such lease or leases one-sixteenth (1/16th) part of all oil, gas and other minerals taken and saved under such lease or leases, and he shall receive

---

1. The name given the form should not be given controlling effect. *Etter v. Texaco, Inc.,* 371 S.W.2d 702, 705 (Tex.Civ.App.-Waco 1963, writ ref'd n.r.e.).

the same out of the royalty provided for in such lease or leases, but Grantee shall have no part in the annual rentals paid to keep such lease or leases in force until drilling is begun.

TO HAVE AND TO HOLD the same unto the said Grantee, his heirs and assigns, forever; and we hereby bind ourselves, our heirs, executors and administrators to WARRANT and FOREVER DEFEND all and singular the said minerals unto the said Grantee, his heirs and assigns, against all persons whomsoever lawfully claiming or to claim the same or any part thereof.

Vicente Saenz and Inocencia de Saenz also executed a Mineral Deed in favor of Homer P. Lee. The Mineral Deed conveyed "an undivided fifteen-thirty-seconds (15/32) interest in and to all of the oil, gas and other minerals in and under the [Property] .... together with the rights of ingress and egress at all times for the purpose of taking said minerals." The Mineral Deed contained provisions similar to the Contract, stating:

It is distinctly understood and herein stipulated that said land is under an Oil and Gas Lease made by Grantor providing for a royalty of 1/8th of the oil and certain royalties or rentals for gas and other minerals, and that Grantee herein shall receive 15/32nds of the royalties and rentals provided for in said lease; insofar as it covers the above described land; but he shall have no part of the annual rentals paid to keep said lease in force until drilling is begun.

It is further agreed that Grantee shall have no interest in any bonus money received by the Grantor in any future lease or leases given on said land, and that it shall not be necessary for the Grantee to join in any such lease or leases so made. Nevertheless, neither the Grantor, nor the heirs, administra-

tors, executors and assigns of the Grantor shall make or enter into any lease or contract for the development of said land, or any part of same, for oil, gas or other minerals, unless each and every such lease, contract, leases, or contracts, shall provide for at least royalty of the usual one-eighth to be delivered free of cost in the pipe line, and a royalty on natural gas of one-eighth of the value of same when sold or used off the premises, or one-eighth of the net proceeds of such gas; and one-eighth of the net amount of gasoline manufactured from natural or casinghead gas. That Grantee shall receive under such lease or leases 15/32 of 1/8 part of all oil, gas and other minerals taken and saved under any such lease or leases, and he shall receive the same out of the royalty provided for in such lease or leases, but Grantee shall have no part in the annual rentals paid to keep such lease or leases in force until drilling is begun.

TO HAVE AND TO HOLD the same unto the said Grantee, his heirs and assigns forever; Grantors hereby bind themselves, their heirs, executors and administrators to Warrant and Forever Defend all and singular the said minerals unto the said Grantee, his heirs and assigns, against all persons whomsoever lawfully claiming or to claim the same or any part thereof.

The lease in effect at the time the Contract and Mineral Deed were executed, which provided for the payment of a 1/8 royalty, terminated, and the new lease provided for a 1/5th royalty. The parties filed competing motions for summary judgment. The Claypool/Lee Claimants asserted that they are entitled to 1/2 of the 1/5 royalty and 15/32nds of the 1/5 royalty, respectively. The Saenz Claimants asserted that the language limiting the royalty under future leases must be given effect, thereby limit-

ing the royalty to be received by the Claypool/Lee Claimants to a fixed 1/16th under the Contract and 15/32nds of 1/8th under the Mineral Deed of the 1/5 royalty received under the new lease. The trial court granted summary judgment in favor of the Claypool/Lee Claimants, and the Saenz Claimants appealed.

## STANDARD OF REVIEW

■ The party moving for summary judgment carries the burden of establishing that no material fact issue exists and that it is entitled to judgment as a matter of law. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999). When competing motions for summary judgment are filed, and one is granted and the other denied, the reviewing court must review the summary judgment evidence presented by both sides and determine all questions presented. *Commissioners Court of Titus County v. Agan,* 940 S.W.2d 77, 81 (Tex. 1997).

## CONSTRUCTION OF DEED

■ When interpreting a deed just as in interpreting a contract, the intent of the parties is to be determined from the express language found within the four corners of the document. *Luckel v. White,* 819 S.W.2d 459, 461–63 (Tex.1991); *Walker v. Foss,* 930 S.W.2d 701, 704 (Tex.App.-San Antonio 1996, no writ). Construction of an unambiguous deed is a question of law to be resolved by the court. *Luckel,* 819 S.W.2d at 461; *Walker,* 930 S.W.2d at 704. All parts of the deed are to be harmonized, construing the instrument to give effect to all of its provisions. *Luckel,* 819 S.W.2d at 462; *Walker,* 930 S.W.2d at 704.

### A. Saenz Claimants' Argument

The Saenz Claimants argue that while the granting clause of the deeds granted the Claypool/Lee Claimants an undivided one-half and 15/32nds mineral interest, respectively, the future lease clause reduced the amount of royalty payable to the Claypool/Lee Claimants under future leases. The Saenz Claimants contend that if the Claypool/Lee Claimants had decided to develop their undivided interests in the minerals, they would have been entitled to one-half and 15/32nds of the proceeds from their production, respectively.[2] If they chose not to produce the minerals, their right to receive income from production would be reduced by the future lease clause.

### B. The Claypool/Lee Claimants' Argument

The Claypool/Lee Claimants argue that the granting clauses of the deed conveyed an undivided mineral interest and that the future lease clause is nothing more than a recognition of what the royalty would be under a future lease providing for the usual 1/8 royalty. The Claypool/Lee Claimants argue that the mineral interest cannot be "transmogrified into a fixed royalty conveyance" upon the termination of the existing lease. The Claypool/Lee Claimants note that the deeds expressly warrant title to the minerals, not to a fixed royalty.

### C. Analysis

The issue presented in this appeal requires us to consider two lines of cases in an area of the law in which the most recent pronouncement by the Texas Supreme Court is in the form of a plurality opinion, and only one of the justices who participated in that decision remains on the court.

2. As later discussed, we do not decide whether the Claypool/Lee Claimants have the right to develop based on their rights of ingress and egress, we only assume that they have this right in addressing the Saenz Claimants' contentions.

*See Concord Oil Co. v. Pennzoil Exploration & Production Co.*, 966 S.W.2d 451 (Tex.1998) (Opinion by Owens, joined by Phillips, Hecht, and Abbot; Concurring opinion by Enoch; Dissenting opinion by Gonzalez, joined by Spector, Baker and Hankinson). The two lines of cases involve: (1) determining whether an interest conveyed in a mineral deed is a mineral ownership interest or a royalty interest; and (2) reconciling deeds containing different fractional interests in the granting clause and the future lease clause.

1. Ownership v. Royalty Interest

■ The first line of cases deals with determining the nature of the interest conveyed. The five essential attributes of a severed mineral estate are: (1) the right to develop (the right of ingress and egress); (2) the right to lease (the executive right); (3) the right to receive bonus payments; (4) the right to receive delay rentals; and (5) the right to receive royalty payments. *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex.1986). The Texas Supreme Court, however, has recognized that "a mineral interest shorn of the executive right and the right to receive delay rentals remains an interest in the mineral fee." *Altman*, 712 S.W.2d at 118–19.

In *French v. Chevron U.S.A., Inc.*, 896 S.W.2d 795 (Tex.1995), the court considered the distinction between a mineral fee interest and a royalty interest. In that case, the deed conveyed "an undivided Fifty (50) acre interest, being an undivided 1/656.17th interest in and to all of the oil, gas and other minerals, in, under and that may be produced from the following described lands...." *French*, 896 S.W.2d at 796. In a subsequent paragraph, the deed stated, "It is understood and agreed that this conveyance is a royalty interest only," and then listed the rights the grantee did not have, including any interest in the delay or other rentals, any control over

leasing the lands, and any ability to make a lease contract to develop the land. *Id.* The court interpreted the transfer to have conveyed a mineral interest with reservation of all developmental rights, leasing rights, bonuses, and delay rentals. *Id.* The court noted that the reservation of the various attributes of a severed mineral estates would have been redundant if only a royalty interest was conveyed. *Id.; see also Bank One, Texas, Nat'l Assoc. v. Alexander*, 910 S.W.2d 530, 535 (Tex.App.-Austin 1995, writ denied) (finding deed reserved mineral interest because express conveyance of first four *Altman* rights would be redundant if deed reserved only a royalty interest).

■ Similarly, the deeds at issue in this case convey an undivided interest in and to all of the oil, gas and other minerals in and under the property and reserve in the grantors at least the second, third, and fourth *Altman* rights. Although the right to develop, referred to as the right of ingress and egress, appears to be expressly conveyed in the deeds, the court in *French* stated "the right to develop is a correlative right and passes with the executive rights." Accordingly, it is unclear whether the deeds reserved the first *Altman* right. Nevertheless, the phrase "in and under" refers to a mineral interest. *See generally* Laura H. Burney, *Interpreting Mineral and Royalty Deeds: The Legacy of the One–Eighth Royalty and Other Stories*, 33 St. Mary's L.J. 1, 30–31 (2001). Furthermore, the reservation of the second, third, and fourth *Altman* rights would have been redundant if the deeds intended to convey a royalty interest. Therefore, applying the first line of cases, we hold that the deeds conveyed a mineral interest. The question becomes whether the conflicting fractions in the deeds resulted in a conveyance of a fractional mineral interest that was greater than the royalty interest

that the grantee would receive under future leases. That question leads us to the second line of cases that must be considered.

2. Conflicting Fractions

The second line of cases deals with reconciling conflicting fractions within a deed. The Saenz Claimants rely heavily on the Texas Supreme Court's decision in *Luckel v. White*, 819 S.W.2d 459, 461–63 (Tex. 1991). In *Luckel*, the deed at issue conveyed a 1/32nd royalty interest in the granting clause but the future lease clause stated that the grantee was entitled to 1/4th of any and all royalties reserved under future leases. 819 S.W.2d at 461. The court concluded that the future lease clause was effective to convey a one-fourth interest in all royalties as to future leases, harmonizing the reference to 1/32nd by noting that one-fourth of the usual one-eighth royalty (which was the royalty under the existing lease at the time of the conveyance) is 1/32nd. *Id.* at 462.

The overriding distinctions between the instant case and *Luckel* is that in *Luckel* the conflicting fractions both involved royalty interests, and the fractional royalty interest in the future lease clause was greater than the fractional royalty interest in the granting clause. In this case, the conflicting fractions involve a mineral interest and a royalty interest, and the fractional royalty interest in the future lease clause is less than the mineral interest originally granted. This may, however, be a distinction without a difference.

In *Luckel*, the Texas Supreme Court overruled *Alford v. Krum*, 671 S.W.2d 870 (Tex.1984), *overruled, Luckel v. White*, 819 S.W.2d at 464. In *Alford*, the granting clause of the deed conveyed "one half of the one-eighth interest in and to all of the oil, gas and other minerals in and under and that may be produced from" certain land. 671 S.W.2d at 871. The deed then provided that the land was subject to an existing lease and that the sale "covers and includes 1/16 of all the oil royalty and gas rental or royalty due and to be paid under the terms of said lease." *Id.* at 872. The future lease clause then provided that "in the event that the said above described lease for any reason becomes cancelled or forfeited, then and in that event, the lease interests and all future rentals on said land, for oil, gas and mineral privileges shall be owned jointly by [the parties] each owning a one-half interest in all oil, gas and other minerals in and upon said land, together with one-half interest in all future rents." *Id.* The Texas Supreme Court held that an irreconcilable conflict existed between the granting clause and the future lease clause; therefore, under the applicable rules of construction, the granting clause should control. *Id.* at 873.

In interpreting the lease in *Luckel*, the court noted that the only significant difference between that case and *Alford* is that *Alford* dealt with the conveyance of a fractional mineral interest and the *Luckel* case dealt with a fractional royalty interest. 819 S.W.2d at 463. The court stated, "That difference is not material. A royalty interest is an interest in land that is part of the total mineral estate.... A royalty interest derives from the grantor's mineral estate and is a nonpossessory interest in minerals that may be separately alienated. The same instrument may convey an undivided portion of the mineral estate and a separate royalty interest, and the royalty interest may be larger or smaller than the interest conveyed in the minerals in place." *Id.* This language in *Luckel* appears to support the Saenz Claimants' contention that the deeds in question could convey an undivided portion of the mineral estate and a separate royalty that would become smaller under future

leases than the interest in the minerals in place.

In *Concord*, however, this court relied on the "two-grant" or "multiple-grant" theory to hold that a deed conveyed a 1/96 mineral interest and a separate 1/12 interest in rentals and royalties. 878 S.W.2d 191 (Tex.App.-San Antonio 1994), *rev'd*, 966 S.W.2d 451 (Tex.1998). The Texas Supreme Court reversed, noting that it was not evident from the four corners of the conveyance that two differing interests were to be conveyed. *Id.* at 457. The court reasoned that the deed had two references to the term "estate" indicating that only a single estate was being conveyed. *Id.* In addition, the deed stated that the estate being conveyed did not depend upon the validity of and would not be affected by the termination of leases. *Id.* The court noted that if two estates were conveyed, the termination of the leases would have an effect on the conveyed estate. *Id.* Finally, the court reasoned, "No language in the conveyance indicates that the 1/12 interest in rents and royalties was meant to be *in addition to* or *separate from* the estate granted in the opening clause." *Id.* This reasoning appears to somewhat conflict with the following language in *Luckel* which states, "The future lease clause in the Mayes–Luckel deed recites that the grantee 'shall be entitled to one-fourth of any and all royalties reserved under said leases.' This language is as effective to grant an interest as the formal 'do hereby grant, bargain, sell and convey' language of what we have designated as the 'granting' clause." 819 S.W.2d at 463. Thus, *Luckel* does not appear to require language indicating two estates were conveyed or that the second estate was "in addition to" or "separate from" the first estate.

The other case frequently cited that directly deals with a conflicting fraction in a deed conveying a mineral interest, as opposed to a royalty interest, is *Garrett v. Dils Co.*, 157 Tex. 92, 299 S.W.2d 904 (1957). In *Garrett*, the Texas Supreme Court considered a deed that conveyed "an undivided one sixty-fourth interest in and to all of the oil, gas and other minerals in and under, and that may be produced from" certain land. 299 S.W.2d at 905. The deed provided that it was subject to an existing oil and gas lease and that "it is understood and agreed that this sale is made subject to the terms of said deed, but covers and includes one-eighth of all the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease." *Id.* The deed further provided, "in the event that the above described lease for any reason becomes cancelled or forfeited, then and in that event an undivided one-eighth of the lease interest and all future rentals on said land for oil, gas and other mineral privileges shall be owned by said Grantee, he owning one-eighth of one-eighth of all oil, gas, and other minerals in and under said lands, together with one-eighth interest in all future rents." *Id.* The court held that the deed would have conveyed a one sixty-fourth mineral interest "[h]ad other language in the deed not disclosed what the parties understood 'one sixty-fourth' to mean." *Id.* at 906. The court noted that the grantee would be entitled to receive one-eighth of the one-eighth royalty under the existing lease and reasoned, "We can discover in that language no intent to grant a less interest under a subsequent lease than that granted under the then existing lease." *Id.*

■ Although the granting clause in *Garrett* unlike *Luckel* conveys a mineral interest and not a royalty interest, *Garrett* is distinguishable from the instant case. In *Garrett*, the future lease clause conveyed all rights incident to ownership, in-

cluding the right to lease and the right to receive bonus payments and annual rentals. Accordingly, the only question before that court was which fraction of the mineral interest was conveyed. Therefore, the problematic conflict between the granting of a mineral interest and a future lease provision appearing to convey a smaller royalty interest was not addressed.

The conflicting fraction problem often arises due to a 1923 case (which was later overruled) that led to the development of the "three-grant" or multiclause lease form containing: (1) the granting clause; (2) a "subject to" clause; and (3) a "future lease" clause. *See Concord Oil Co.,* 966 S.W.2d at 459–60; *see generally* Laura H. Burney, *Interpreting Mineral and Royalty Deeds: The Legacy of the One–Eighth Royalty and Other Stories,* 33 St. Mary's L.J. 1, 5–6 (2001). Because the typical royalty provided for in oil and gas leases at the time was 1/8, the conflicting fractions in the different clauses would generally be some multiple of 1/8. *Concord Oil Co.,* 966 S.W.2d at 460.

Harmonizing all parts of the Contract and Mineral Deed, we conclude that the trial court properly construed the deeds by adopting the position of the Claypool/Lee Claimants. The Saenz Claimants concede that the granting clause granted a mineral interest of 1/2 and 15/32nds, respectively. The Saenz Claimants, however, contend that when the current lease was executed, the Claypool/Lee Claimants' entitlement to a portion of the royalty somehow reverted

back to the Saenz Claimants. If we were to accept this contention, a reversion in interest could occur each time a subsequent future lease was executed.[3] This position does not appear consistent with the four corners of the Contract or Mineral Deed contemplating a single conveyance with fixed rights. In order to harmonize the ownership of a fixed mineral interest with a reduced royalty interest, the Saenz Claimants argue that the Claypool/Lee Claimants could avoid the reduced royalty interest by "develop[ing] [their] undivided one-half interest in the minerals . . . ." After costs are paid, the Saenz Claimants contend that the Claypool/Lee Claimants "would [be] entitled to receive one-half of the proceeds from production." Since the Saenz Claimants exclusively control the right to lease and those leases would grant the lessee the right to develop the oil and gas in and under the Property, the Saenz Claimants fails to explain how the Claypool/Lee Claimants could protect their mineral interest's corresponding right to income from production by developing the Property leased by the Saenz Claimants to a third party.

Acknowledging the reason for the development of the three-grant or multiclause lease form and the typical royalty provided in leases at the time the Contract and Mineral Deed were executed, we can harmonize the lease provisions in such a way that the Claypool/Lee Claimants' respective 1/2 and 15/32nds mineral interests en-

---

3. For example, taking into consideration the Contract and applying the Saenz Claimants' construction, the existing lease at the time of the conveyance contained a 1/8th (640/5120ths) retained royalty interest. At that time, the Saenz Claimants had 1/2 of the retained royalty or 320/5120ths, and the Claypool/Lee Claimants had 1/2 of the retained royalty or 320/5120ths. When the current lease was executed, the Claypool/Lee Claimants royalty interest was reduced to 1/16th of 1/5th or 1/80th (64/5120ths). As a result, 256/5120ths of the royalty interest previously held by the Claypool/Lee Claimants reverted back to the Saenz Claimants. If a future lease was executed with a retained royalty of 1/4th, the Claypool/Lee Claimants royalty interest would be 1/16th of 1/4th (80/5120ths), requiring a 16/5120ths royalty interest to spring back to the Claypool/Lee Claimants from the Saenz Claimants.

title them to consistently receive a 1/2 and 15/32nds interest in whatever amount of royalty is paid under the future lease clause. Our holding is consistent with the *Concord* decision because neither the Contract nor the Mineral Deed contain any language that make it evident that two differing estates were to be conveyed. 966 S.W.2d at 457. This construction is bolstered by the language in the Mineral Deed which restricts the ability of the grantor to enter into a future lease that provides for less than a one-eighth royalty. This language contemplates the possibility of a future lease containing a larger royalty. The Mineral Deed then states that the grantee shall receive "under such leases" referring to the future leases containing the "usual one-eighth" royalty, 15/32nds of 1/8th. It therefore follows that if the grantor enters into a future lease with a royalty that is larger than the "usual one-eighth," the grantee would be entitled to 15/32nds of the larger royalty interest. We conclude that the trial court properly construed the Contract and the Mineral Deed.

## Duhig Doctrine

In *Duhig v. Peavy–Moore Lumber Co.,* 135 Tex. 503, 144 S.W.2d 878 (1940), W.J. Duhig, as grantee, was conveyed title to a tract of land in a deed that reserved to the grantor an undivided one-half interest in the minerals. Duhig subsequently conveyed the land to another party by a deed that stipulated that the grantor retained an undivided one-half interest in all of the mineral rights or minerals in and on the land. *Id.* at 878. The question presented was whether Duhig reserved for himself the remaining one-half interest or merely excepted the one-half interest reserved to the original grantor. *Id.* at 879. The court assumed that because the word "retain" means to keep what one already owns, the deed only conveyed title to the

surface estate. *Id.* at 880. The court noted that by adopting that construction, the warranty in the deed was breached at the very time of the execution and delivery of the deed because the deed warranted title to the surface estate and to an undivided one-half interest in the minerals. *Id.* Likening the situation to the rule against after-acquired title, the court held that Duhig and those claiming under him were estopped from asserting title to the remaining one-half interest in minerals. *Id.* at 880–81.

In *Duhig,* the problem arose because the deed purported to convey an undivided one-half interest in the minerals to the grantee; however, if the grantor "retained" a one-half interest, then the grantee would not receive any interest. Accordingly the grantor could not convey and retain a one-half interest because that exceeded the amount of minerals he owned.

In this case, the grantors owned the entire mineral estate, and the conveyances did not exceed the amount of the mineral estate that was owned. Accordingly, the warranty with regard to the mineral estate conveyed was not breached, and the *Duhig* doctrine is not applicable.

## Expert Opinions

In their final issue, the Saenz Claimants contend that the trial court erred in granting the Claypool/Lee Claimants' motion for summary judgment because they attached title opinions to their motion that address a question of law regarding the construction of the deeds. Although experts are not permitted to testify regarding their opinions as to pure questions of law such as the construction of unambiguous contracts and deeds, *see Akin v. Santa Clara Land Co., Ltd.,* 34 S.W.3d 334, 339 (Tex. App.-San Antonio 2000, pet. denied); *Holden v. Weidenfeller,* 929 S.W.2d 124, 133

(Tex.App.-San Antonio 1996, writ denied), the law presumes that in a matter not tried before a jury, a court disregards any incompetent evidence and considers only the competent evidence in reaching its decision. *Acker v. Denton Pub. Co.,* 937 S.W.2d 111, 119 (Tex.App.-Fort Worth 1996, no writ); *State ex rel. Grimes County Taxpayers Ass'n v. Texas Municipal Power Agency,* 565 S.W.2d 258, 277 (Tex. Civ.App.-Houston [1st Dist.] 1978, writ dism'd). Because we must presume the trial court did not consider any incompetent evidence, the Saenz Claimants cannot establish harm from the attachment of the title opinions to the Claypool/Lee Claimants motion.

### CONCLUSION

The trial court's judgments are affirmed.