**Opinion issued May 22, 2025.**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-23-00359-CV**

————————————

**IN RE THE ESTATE OF RICHARD LEE BRAMBLETT, DECEASED**

---

**On Appeal from the Probate Court of Galveston County, Texas**
**Trial Court Case No. PR-0081168**

---

**O P I N I O N**

Both Debra Bramblett (Debra) and Edward Bramblett (Ed), the children of Richard Lee Bramblett (Richard), deceased, petitioned the trial court for declaratory judgment to resolve their disagreement about whether Richard's estate included several rental properties—specifically, whether the transfer of those properties to

series in Tall Pines Holdings, LLC ("Tall Pines")[1] by special warranty deed eight days before Richard's death was effective and thus removed them from the estate. After a bench trial, the trial court granted Ed's petition for declaratory relief, holding that the transfer was valid, Ed's exercise of his option to purchase Tall Pines was valid, and Ed was Tall Pines' sole member.

On appeal, Debra contends in four issues that the trial court erred in interpreting Tall Pines' Company Agreement and in admitting the testimony of Ed's expert witness.

We affirm.

### Background

At the bench trial, Ed testified that he was a lawyer who had been disbarred for using client funds for personal expenses. In March 2007, he moved into his parents' house to help care for his mother until her death in 2010. At the same time, Richard and Ed began a small business investing in and managing home rental properties. Ed worked with a realtor and a mortgage broker and located a property to buy. Richard, acting individually, bought the property. By 2022, Richard had acquired seven properties. Ed managed the properties.

Sometime after beginning this rental business, Richard signed Tall Pines' Company Agreement. The Company Agreement, dated September 16, 2011, states

---

[1] *See* TEX. BUS. ORGS. CODE § 101.601 (explaining how to create series LLC).

2

that Tall Pines was "organized as a Texas limited liability company." It provides that Tall Pines "may at any time establish a series by designating Members, Managers, membership interests, or assets." Each series established by Tall Pines has a separate right "to own, exchange, sell, transfer, exchange [sic], assign, pledge, encumber, or lease for cash, property or credit, or to partition, publicly or privately." Each series also has the "power and capacity to (a) sue and be sued; (b) to make and perform all contracts; [(c)] to hold title to the assets of [the series], including real property, personal property, and intangible property; and (d) to grant liens and security interests in the assets of [the series]." And its "debts, liabilities, obligations, and expenses" were enforceable only against the assets of that series. The Company Agreement also states that none of the debts, liabilities, obligations, and expenses incurred, contracted for or otherwise existing" as to Tall Pines generally were enforceable against the assets of a series. Attached to the Company Agreement are Exhibits A, B, and C, titled "Assets of Series A," "B," and "C," respectively, which are blank underneath.

From the formation of Tall Pines until the time of his death, Richard held 100% of its membership interest and ownership interest. The Company Agreement defines "membership interest" as "the interest of a member of the Company, including, without limitation, rights to distributions, . . . allocations, information, and to consent or approve." The Company Agreement reflects that Richard made an

3

initial capital contribution of $2,000 and a capital commitment of $2,000, for an ownership interest of "100 units." Attachment 1 to the Company Agreement provides that the "agreed value" of each unit is $20.

Among other provisions, the Company Agreement provided several options for transfer of Richard's membership interest after Richard's death, including the following:

> 14.02 **Death of Initial Member.** The provisions of Section 14.03 shall be suspended, and the option period set forth therein shall be tolled, for one (1) year if the terms of this Section apply. To the extent the option set forth in this Section is exercised with respect to a Membership Interest, the terms of Section 14.03 shall not apply to such Membership Interest. Upon the death of RICHARD LEE BRAMBLETT, his son EDWARD LEE BRAMBLETT, if he survives RICHARD LEE BRAMBLETT, shall for a period of one (1) year have the option to purchase all or any portion of RICHARD LEE BRAMBLETT's Membership Interest at the Agreed Value. EDWARD LEE BRAMBLETT does not survive RICHARD LEE BRAMBLETT, then his wife, VICKIE BRAMBLETT, if they are married at the time of RICHARD LEE BRAMBLETT's death or the death of EDWARD LEE BRAMBLETT, whichever occurs sooner, shall for a period of one (1) year have the option to purchase all or any portion of RICHARD LEE BRAMBLETT's Membership Interest at the Agreed Value.

On October 19, 2018—eight days before his death and in the presence of a notary public—Richard executed special warranty deeds purporting to transfer the seven rental properties from himself to Series A, B, C, D, E, F, and G of Tall Pines. Each deed provided:

> THAT RICHARD L. BRAMBLETT, of Galveston County, Texas (hereinafter referred to as "Grantor"), for and in consideration of the sum of TEN and NO/100 DOLLARS ($10.00) cash and other good and valuable consideration in hand paid by SERIES [identified by its corresponding letter], an individual series of TALL PINES HOLDINGS, LLC, a Texas Series Limited Liability Company (hereinafter referred to as "Grantee"), have GRANTED, SOLD and

4

> CONVEYED, and by these presents do GRANT, SELL and CONVEY to Grantee, all of Grantor's interest in and to the following real property together with all improvements situated thereon . . . .

Each deed provided a legal description of the subject property, and the parties do not dispute that the deeds otherwise contain the necessary language of conveyance.

Debra testified that as of 2020, Richard had invested about $815,000 in the seven rental properties. He also held mortgages on the properties. Debra understood Company Agreement section 14.02 as giving Ed the option to purchase properties for $815,000. Debra testified from an email that Richard had sent to his CPA stating that Richard intended to have his executor sell Tall Pines to Ed for a price equal to his investment in the real estate. Debra thought that Richard made a mistake in not updating the Company Agreement from the 2011 value ($2,000) to the 2020 value.

In her testimony, the temporary administrator of Ed's estate confirmed that she received two cashier's checks from Ed—one for $200 and the other for $1,800—before the one-year anniversary of Richard's death.

The trial court also heard testimony from the parties' dueling legal experts on the attributes of a series LLC, relevant provisions in the Texas Business Organizations Code, and the interpretation of the Company Agreement.

In its ruling on Ed's petition and Debra's counter-petition for declaratory judgment, the trial court declared the following:

- The Company Agreement of Tall Pines Holdings, LLC is not ambiguous.

5

- Series A–G of Tall Pines Holdings, LLC were validly created and formed.

- Edward Bramblett had the option to purchase Tall Pines Holdings, LLC under Article 14.02 of the Company Agreement for Tall Pines Holdings, LLC.

- The Agreed Value of Tall Pines Holdings, LLC was identified as $20 per unit on page 50 of the Tall Pines Holdings, LLC Company Agreement.

- Edward Bramblett validly exercised his option to purchase Tall Pines Holdings, LLC.

- Edward Bramblett became the sole member of Tall Pines Holdings, LLC on the day he exercised his option.

**Interpretation of the Company Agreement**

In her first issue, Debra asserts that if the Company Agreement is unambiguous, the trial court erred interpreting it 1) as having validly created Series A through G, and 2) as giving Ed the option to purchase the Series properties. Alternatively, in her second issue, Debra argues that the Company Agreement is ambiguous and thus, the trial court erred in failing to consider the circumstances present when Richard executed it.

In her briefing under these issues, Debra challenges the validity of the transfer of the rental properties into the various series in Tall Pines and the Company Agreement's purchase option as exercised by Ed. These challenges only state a disagreement with Ed's position and the trial court's judgment, which does not

necessarily render any term of the Company Agreement ambiguous. *See Scout Energy Mgmt., LLC v. Taylor Props.*, 704 S.W.3d 544, 547 (Tex. 2024). Debra's challenges require us to determine whether the plain language of the Company Agreement complies with the applicable statute and if so, whether the trial court properly applied the Company Agreement to the undisputed facts. These are both questions of law we review de novo. *See Aflalo v. Harris*, 583 S.W.3d 236, 241 (Tex. App.—Dallas 2018, pet. denied) (en banc); *Rudisill v. Arnold White & Durkee, P.C.*, 148 S.W.3d 556, 559 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

## A. Texas Series LLCs

A series LLC is a legal entity in which one or more series are established within a single LLC. *See* TEX. BUS. ORGS. CODE § 101.601. The Business Organizations Code states that in its company agreement, an LLC

> may establish or provide for the establishment of one or more designated series of members, managers, membership interests, or assets that:
>
> (1) has separate rights, powers, or duties with respect to specified property or obligations of the limited liability company or profits and losses associated with specified property or obligations; or
>
> (2) has a separate business purpose or investment objective.

TEX. BUS. ORGS. CODE § 101.601(a). The series structure "allows a business to partition its assets and liabilities among various series and have different economic arrangements with respect to the different series contained within a single entity."

7

Note and Comment, *Paving the Way For Secured Lenders: Why Texas Should Follow Delaware's Series LLC Statutes*, 71 BAYLOR L. REV. 466, 468 (2019) (internal quotation omitted). "The kernel legal concept of the Series LLC is the internal segregation of assets." Adrienne Randle Bond & Allen Sparkman, *The Series LLC: A New Planning Tool*, 45 TEX. J. BUS. L. 57, 58 (2012).

**B.      The Rental Properties' Transfer to Series A through G Was Valid**

Debra contends that the failure to include certain definite terms in the Company Agreement creating series A through G precluded their valid formation. Her contention, though, is not supported by the applicable statutory language, which is permissive and forward-looking: the series do not have be set in stone when the company agreement is first executed. *See* TEX. BUS. ORGS. CODE § 101.601(a) (company agreement "*may* establish *or provide for the establishment of* one or more designated series") (emphasis added). Article XX of the Company Agreement expressly provides for the establishment of additional series, stating that Tall Pines "may at any time establish a Series by designating Members, Managers, membership interests, or assets."

Debra's position that the transfer of the rental properties to their respective series was invalid also fails to acknowledge that each deed 1) transferred the subject property to an identified "series of Tall Pines Holdings, LLC" and 2) after recording, was returned to the identified series at Tall Pines' address. "A written company

agreement may consist of one or more agreements, instruments, or other writings and may include or incorporate one or more schedules, supplements, or other writings providing for the conduct of the business and affairs of the limited liability company or of a series of the limited liability company." *Id.* § 101.001(1). The deeds, read together with the Company Agreement, show that each property was effectively transferred into a corresponding series within the LLC. *See id.* § 2.101(3) (explaining that a domestic entity has the power to "acquire, receive, own, hold, improve, use, and deal in and with property or an interest in property"). And in any event, Tall Pines was the legal entity that ultimately received the property transfers. *See id.* § 101.622 (stating that even a protected series or registered series "is not a separate domestic entity or organization").

Debra next asserts that the failure to designate series members renders all the series invalid, but the statutory provision she relies on applies only to "protected series" or "registered series." *See id.* §§ 101.602–101.636. A "series" like those that the Company Agreement either established or provided for the establishment of, is not the same as a "protected series" or a "registered series." *See id.* § 101.601(b) (distinguishing between "[a] series established in accordance with Subsection (a)" and "a protected series or registered series established in accordance with Section 101.602"). "Protected series" and "registered series" did not appear in the statute until it was amended in 2022 (after the effective date of the Company Agreement),

9

the term "protected" or "registered" is not in the Company Agreement, and there is no evidence that either a certificate of registered series was filed with the secretary of state or the limitations were stated in the certificate of formation as required. *See id.* §§ 101.602(b)(3), (c), 101.604(3)(a) [Act of Apr. 30, 2021, 81st Leg., R.S., ch. 43, § 1, 2021 Tex. Gen. Laws 68 (eff. June 1, 2022)]. Thus, section 101.608(b) does not apply to the Company Agreement.

Under the applicable provision, no member need be designated to form a valid series; a series may be formed with "members, managers, membership interests, *or* assets." *Id.* § 101.601(a) (emphasis added). Because the statute permits formation of a series with only assets, the lack of a series member did not render any series invalid.

Debra argues that the mandatory termination provision of the Company Agreement conflicts with the provision giving Ed an option to purchase Richard's membership interest and that Tall Pines' purported failure to update the Company Agreement to reflect the properties transferred into the series or otherwise comply with record-keeping requirements rendered the Company Agreement invalid. She cites only her expert witness's conclusory testimony as support for these arguments, but "conclusory testimony cannot support a judgment because it is considered no evidence." *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 222–23 (Tex. 2019) (internal quotations omitted). "[A]lthough expert

10

opinion testimony often provides valuable evidence in a case, 'it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere ipse dixit of a credentialed witness.'" *Gen. Motors Corp. v. Iracheta*, 161 S.W.3d 462, 470–71 (Tex. 2005) (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999)). Because Debra has not presented any evidence or applicable legal authority to support these arguments, they provide no grounds for reversal.

**C.     Ed validly exercised his option to purchase Tall Pines, including its Series A through G**

As for Debra's contention that the purchase option set forth in Company Agreement section 14.02 did not entitle Ed to purchase all of Richard's membership interest in Tall Pines Holdings for $2,000, the plain language of the Company Agreement states the contrary. It reflects that Richard made an initial capital contribution of $2,000 and a capital commitment of $2,000 for an ownership interest of "100 units," and Attachment 1 to the Company Agreement provides that the "agreed value" of each unit is $20. Because Richard was the sole member and owner of Tall Pines Holdings, LLC, Ed's purchase of Richard's entire membership interest under this provision made him the sole member and owner. Tall Pines has no other members in the LLC or any of its associated series.

A company agreement governs an LLC's internal affairs. TEX. BUS. ORGS. CODE § 101.052(a); *Bay Area RV Parks, L.L.C. v. WGB RV Parks, LLC*, No. 01-21-00085-CV, 2023 WL 2248738, at *6 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023, pet. denied) (mem. op.). It "may contain any provisions for the regulation and management" of the LLC's affairs "not inconsistent with law." *Id.* § 101.052(d). When interpreting a company agreement, we apply general principles of contract construction. *See Bay Area RV Parks, L.L.C.*, 2023 WL 2248738, at *6 (citing *Abdullatif v. Choudhri*, 561 S.W.3d 590, 609–10 (Tex. App.—Houston [14th Dist.] 2018, pet. denied)).

When the provisions of a company agreement are unambiguous, we must enforce them as written. *Id.* We do not question the wisdom of the parties' agreement, and we may not rewrite the agreement's provisions under the guise of interpreting it. *Id.* at 609–10; *see Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 162 (Tex. 2003) (stating that court may neither rewrite parties' contract nor add to its language). Instead, we must determine and enforce the parties' intent as expressed within the four corners of the written agreement. *Piranha Partners v. Neuhoff*, 596 S.W.3d 740, 743 (Tex. 2020); *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018). The Company Agreement thus entitled Ed to purchase all of Richard's membership interest in Tall Pines Holdings for $2,000.

Debra also asserts that Ed's exercise of his option to purchase Tall Pines extended only to LLC assets and not to series assets as well. Again, a series LLC is an LLC first—one that allows for one or more series to be established within it. *See* TEX. BUS. ORGS. CODE §§ 101.601(a), 101.622. Under the circumstances presented here, we see no reason to distinguish between LLC assets and series assets for the relevant purposes. The series contain no separate series members, only assets, and there is only one member of Tall Pines. This unity of interest obviates any questions that might otherwise arise in determining whether Ed's purchase of Richard's membership interest in Tall Pines included all assets held by the LLC and its associated series. *See id.* § 101.601(a)(1) (providing that a series "has separate rights, powers, or duties with respect to specified property or obligations *of the limited liability company*") (emphasis added); *see also* Bond & Sparkman, *supra*, at 62 (observing that Business Organizations Code section 101.605's enumeration of specific powers held by a series within a series LLC is "illustrative of the basic premise that a Series LLC is a vehicle to segregate assets within an entity" and indicates that an individual series should not "be treated as a separate entity for purposes of the [Business Organizations Code] generally").

We hold that the trial court did not err in declaring that the Company Agreement 1) validly created Series A through G, and 2) gave Ed the option to purchase the Series properties.

We overrule Debra's first and second issues.

## There Is No Evidence of Mutual Mistake

In her third issue, Debra asserts that Ed's right to purchase Tall Pines including the rental properties for $2,000 is based on Richard's mistake.

Under the doctrine of mutual mistake, a contract may be set aside "when parties to an agreement have contracted under a misconception or ignorance of a material fact." *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990), *quoted in Tex. Black Iron, Inc. v. Arawak Energy Int'l Ltd.*, 566 S.W.3d 801, 820 (Tex. App.—Houston [14th Dist.] 2018, pet. denied). But the doctrine "is not routinely available to avoid the results of an unhappy bargain." *Williams*, 789 S.W.2d at 264. A contract may be set aside under this doctrine only under "narrow circumstances." *Id.* at 265. Proof of mutual mistake must be grounded in the objective circumstances surrounding execution of the contract; self-serving subjective statements of the parties' intent does not suffice. *See id.* at 264.

In asserting that Richard did not intend to sell the rental properties to Ed for $2,000, Debra points out that Richard was "keeping track of his owner investment" in the rental properties until very shortly before his death, and that Richard either

14

"misunderstood the effect" of the Company Agreement and conveyances into series A through G "or he was unaware that, in order to complete his plans, he needed to update the Company Agreement."

None of the evidence relied on by Debra involves the objective circumstances surrounding execution of either the Company Agreement or the deeds. Thus, the trial court did not err in declining to set aside the Company Agreement based on mutual mistake. *See Williams*, 789 S.W.2d at 265.

We overrule Debra's third issue.

**The Trial Court's Admission of Expert Testimony Was Harmless**

In her fourth issue, Debra maintains that the trial court erred in allowing Ed's expert witness, Joseph Leahy, to testify. We presume in a bench trial that the trial court, sitting as the fact finder, disregarded any incompetent evidence. *Gonzalez v. Wasserstein*, No. 01-20-00826-CV, 2022 WL 3268528, at \*6 (Tex. App.—Houston [1st Dist.] Aug. 11, 2022, no pet.) (mem. op.); *Garza v. Prolithic Energy Co. LP.*, 195 S.W.3d 137, 147 (Tex. App.—San Antonio 2006, pet. denied). Because of this presumption, Debra cannot establish any harm resulted from the complained-of testimony. *See* TEX. R. APP. P. 44.1(a).

We overrule Debra's fourth issue.

15

## Conclusion

We affirm the trial court's judgment.


                                        Clint Morgan
                                        Justice


Panel consists of Justices Guerra, Caughey, and Morgan.