

# Fourth Court of Appeals
## San Antonio, Texas

## OPINION

No. 04-24-00382-CV

**B.H.C.H. MINERAL, LTD.**, Petty Business Enterprises, Ltd., Joey R. Peacock, Jr., Trinity
Mineral Management, Ltd., Hardy Mineral and Royalties, Ltd., Mark Paulson, Venada Oil &
Gas, LLP, Appling Minerals, Td., Brenda Phillips on Behalf of B. Bryan Leitch III and on Behalf
of Leitch Company d/b/a MiOil Ltd.,
Appellants

v.

**NEEDMORE MINERALS, LLP**, Southwest Petroleum Company, LP, Serena Kundysek,
Trustee of Big Sky Mineral Trust, et al.,
Appellees

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2022CVK000754D3
Honorable Rebecca Ramirez Palomo, Judge Presiding

Opinion by:     Velia J. Meza, Justice
Dissenting Opinion by: H. Todd McCray, Justice

Sitting:        Rebeca C. Martinez, Chief Justice
                H. Todd McCray, Justice
                Velia J. Meza, Justice

Delivered and Filed: May 20, 2026

AFFIRMED

This case presents a question familiar to Texas oil and gas practitioners: what did a nearly

century-old deed reserve—a fixed 1/32 non-participating royalty interest or a 1/32 non-executive

mineral interest with a corresponding floating royalty? For decades, oil and gas operators paid

appellants as if the reservation were a fixed 1/32 royalty, even after a 1992 agreed judgment described their interest as a 1/32 mineral interest. When the executive mineral owners revisited the title and concluded the reservation should not be treated as a fixed royalty, this litigation followed.

The parties fall into three groups. Appellants, the Esperanza Successors[1] (Esperanza), claim a fixed 1/32 royalty interest and invoke the presumed-grant doctrine and equitable defenses to preserve that characterization. Appellees, Needmore Minerals, LLP and related entities[2] (Needmore) contend the deed reserved a 1/32 non-executive mineral interest with a floating royalty tied to the lease royalty. Various oil and gas operators[3] (the operators) interpleaded funds representing the disputed Esperanza interest after Needmore sued them. The trial court granted traditional and no-evidence summary judgment for Needmore, rejected Esperanza's competing theories, granted the operators' interpleader, and declared that the Esperanza interest is a 1/32 mineral interest. We affirm.

## BACKGROUND

In 1937, Esperanza Livestock & Land Company conveyed a 23,513.3-acre ranch in Webb County to John F. Sinclair, reserving:

---

[1] This group consists of B.H.C.H. Mineral Ltd., Petty Business Enterprises, Ltd., Joey R. Peacock, Jr., Trinity Mineral Management, Ltd., Hardy Mineral and Royalties, Ltd., Mark Paulson, Venada Oil & Gas, LLP, Appling Minerals, Ltd., Brenda Phillips on behalf of B. Bryan Leitch III and on behalf of Leitch Company d/b/a MiOil, Ltd., Ruthanne Kerr, Rachel Kerr Ritter, Thomas Cody Dieterich, Mica Vaughan Dieterich, Southwest Petroleum Company, LP, Serena Kundysek, Trustee of Big Sky Mineral Trust, Thomas Schleier, MPH Production Company, Ernest David Poole, Independent Executor of the Estate of John Gregory Pennock, Deceased, Hal Freeman Simmons, Rosemary Schoolfield, Phipps Mineral Holdings Ltd., David D. Benners, Ann Benners Travis, Henry Hamilton Dewar, II, Trustee of the Henry Hamilton Dewar II Trust, Claire Cravens Dewar, Trustee of the Claire Cravens Dewar Trust, Mary D. Froelich, Trustee of the Mary Dewar Froelich Trust, Albert Stanton Pennock, Trustee of the Albert Stanton Pennock Living Trust, Universal Royalty Company, Susan Lindsley McMordie, Frank D. McMordie, Trustee of the Susan Lindsley McMordie Trust, Mekusukey Oil Company, LLC, Mustang Minerals, LLC, and Dorchester Mineral, LP.

[2] The related entities are Cactus Jack Minerals, LP, Rancho La Cochina Minerals, LP, James W. Turner, Poquito Royalties, LLC, Dan Kinsel, III, Trustee of the DL Kinsel Family Trust, Diggy Diggy Lo, LLC, Moon Minerals, LLC, Tom Gates, Diane Gates, Paul Dirks, San Isidro Development Company, LLC, and L & H Leasing Company, Ltd.

[3] This group consists of EOG Resources, Inc., Lewis Petro Properties, Lewis Energy Group, LP, Lightning Natural Gas, LP, Troubadour Operating, LLC, Troubadour AssetCo., LLC, Troubadour Energy Holdings, LLC, Britancio, LLC, and Gary F. Moy.

> [A]n undivided One-Thirty-second (1/32) of all oil, gas and other minerals on, in and under said land. Grantee, his heirs and assigns, shall have authority to execute and deliver oil, gas and other mineral lease or leases upon said land, or any part thereof, without the necessity of grantor joining therein; provided, however, that in any such lease or leases there must be retained by the Lessor a royalty of at least one-eighth (1/8) in all the oil, gas and other minerals covered by said lease, or leases. As to any lease or leases executed on said land, Grantor shall not be entitled to share in any bonus money or delay rentals paid, or to be paid, thereunder. It is further provided that the undivided interest herein reserved by Grantor shall not be subject to any developing charges or expenses of any character incurred in connection with any such lease or leases.

Esperanza's charter was forfeited in 1951, and its shareholders—the Esperanza Successors—succeeded to the reserved interest. Sinclair then conveyed his interest to John Nance Garner,[4] whose heirs and successors made further conveyances over the years.[5]

In 1967, Garner's successors executed a lease covering the entire mineral estate, reserving a 1/6 landowner's royalty. The lessee-operators recognized the 1937 reservation and, unable to locate the Esperanza Company's shareholders, suspended their share of the royalty. These operators calculated the Esperanza share as a fixed 1/32 gross production rather than as a 1/32 fraction of the landowner's 1/6 royalty.

In 1976 and 1985, the Garners entered indemnity agreements with operators under which they received the previously suspended Esperanza share, describing the 1937 reservation as a "perpetual and nonparticipating royalty interest equal to one-thirty-second of eight-eighths (1/32 of 8/8)" of production. Subsequent Garner-chain conveyances in the late 1980s likewise alternately described the reservation as a "1/32 non-participating royalty interest" and as a "1/32 interest in all oil, gas and other minerals and/or royalty reserved."

---

[4] John Nance Garner was a United States congressman who rose to become Speaker of the House and, later, the thirty-second Vice President of the United States under President Franklin D. Roosevelt.

[5] Those later conveyances include a notable transfer to country music singer George Strait.

In 1990, the Esperanza Successors sued the Garners for their share of the royalties. In 1992, they entered an agreed judgment recognizing the Esperanza Successors' ownership of "a 1/32nd mineral interest" and confirming that the Garners owned the remaining 31/32 mineral interest. Despite the judgment's express language, division orders continued to account for the Esperanza interest as a non-participating royalty interest (NPRI)[6] and operators thereafter paid it as a fixed royalty.

In 2020, San Isidro Development Company, L.C., analyzing the Garner chain of title, concluded that the Esperanza interest had been mischaracterized as a fixed 1/32 NPRI rather than a 1/32 non-executive mineral interest with a floating royalty tied to the lease royalty. San Isidro calculated that the historical treatment had over-credited the Esperanza interest by approximately 2.59% of the 1/6 royalty and under-credited the Garner side by the same amount, assembled an investor group including Needmore Minerals, LLC, and acquired the Garner interests in 2021.

After closing, San Isidro notified the operators that, in their view, the 1937 deed reserved a 1/32 non-executive mineral interest burdened by the lease royalty and demanded corrections. In 2022, Needmore sued the operators for declaratory relief, breach of lease, and statutory underpayment, seeking construction of the 1937 deed and 1992 judgment. Because the parties' rights turned on the "quantum and character" of the Esperanza interest, the operators interpleaded, bringing Esperanza into the suit. Esperanza then asserted that the deed reserved a fixed 1/32 NPRI,

---

[6] Courts and commentators often distinguish several recurring oil-and-gas interests. A mineral interest is an interest in minerals in place that, absent severance, carries the executive, development, bonus, delay-rental, and royalty attributes. *See Hysaw v. Dawkins*, 483 S.W.3d 1, 9 (Tex. 2016). A non-executive mineral interest is a mineral interest in which the executive right—and usually the bonus and delay-rental rights—have been separated, but the holder still shares in royalty in proportion to its mineral share. *See French v. Chevron USA Inc.*, 896 S.W.2d 795, 797–98 (Tex. 1995). A non-participating royalty interest (NPRI) may be fixed or floating and is typically defined as a cost-free share of production or its proceeds, carved out of the mineral estate, that does not include the right to lease or to share in bonuses or delay rentals. *See Haile v. Holtzclaw*, 414 S.W.2d 916, 923 (Tex. 1967). For clarity, we use "mineral interest" and "non-executive mineral interest" to refer to mineral interests (which ordinarily include the right to receive royalties) and "NPRI" to refer to a freestanding royalty carved from the mineral estate. The term "royalty interest" may refer to either the landowner's royalty incident to a mineral estate, to an NPRI, or both, depending on context.

invoked the presumed-grant doctrine, and pled affirmative defenses including laches, estoppel by deed, quasi-estoppel, waiver, and ratification.

Needmore moved for traditional and no-evidence summary judgment on its declaratory-judgment and underpayment claims and on Esperanza's presumed-grant theory and affirmative defenses. Esperanza filed a competing motion for partial summary judgment, seeking a declaration that it owns a fixed 1/32 NPRI by presumed grant and judgment on their defenses. The trial court granted Needmore's motions, denied Esperanza's motions, and signed a final judgment declaring that the 1937 deed reserved a 1/32 non-executive mineral interest and that the royalty attributable to that interest is 1/32 of the lease royalty in effect from time to time (currently 1/6). The trial court also granted the operators' petition in interpleader, dismissing all claims against them without prejudice. *See* TEX. R. CIV. P. 43. This appeal followed.

DISCUSSION

Esperanza raises five issues on appeal, four of which attack the trial court's summary judgment ruling on declaratory relief, and one that is conditioned on our interpretation of the Esperanza interest as a fixed 1/32 NPRI. We begin with the applicable summary-judgment standards before turning to construction of the 1937 deed.

## 1    Standard of review

We review declaratory judgments under the same standards that govern other judgments. TEX. CIV. PRAC. & REM. CODE § 37.010. Summary judgment rulings are reviewed de novo. *Fossil Grp., Inc. v. Harris*, 691 S.W.3d 874, 882 (Tex. 2024). When, as here, both sides move for summary judgment and the trial court grants one motion and denies the other, we consider the summary-judgment evidence presented by both sides, decide all issues properly raised, and render

the judgment the trial court should have rendered. *Dow Chem. Co. v. Bright*, 89 S.W.3d 602, 605 (Tex. 2002).

There are two types of summary judgment in Texas: traditional and no-evidence. *See* TEX. R. CIV. P. 166a.[7] In reviewing either type of motion, we view the evidence in the light most favorable to the nonmovant, crediting favorable evidence if reasonable jurors could do so and disregarding contrary evidence unless reasonable jurors could not. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). When presented with a combined or "hybrid" motion, we generally consider any properly preserved no-evidence grounds first. *Id*.

A movant seeking traditional summary judgment must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). If the movant meets that burden on the grounds expressly presented, the burden shifts to the nonmovant to raise a fact issue. *KCM Fin. LLC v. Bradshaw,* 457 S.W.3d 70, 79 (Tex. 2015).

A no-evidence motion is proper when, after an adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which the nonmovant would bear the burden of proof at trial. TEX. R. CIV. P. 166a. The nonmovant must then produce more than a scintilla of evidence on each challenged element. *Lozada v. Posada*, 718 S.W.3d 262, 266 (Tex. 2025) (per curiam). "Less than a scintilla" exists when the evidence is so weak as to do no more than create a surmise or suspicion; "more than a scintilla" exists when the evidence would enable reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v.*

---

[7] Rule 166a was recently amended, but the review standard has not changed. Our citations are to the version of Rule 166a that was in effect at the time of the trial court proceedings available at: *Texas Rules of Civil Procedure—Rules Effective September 1, 1941: An Historical Project*, Rule 166a, https://www.stcl.edu/lib/TexasRulesProject/TRCP166-175/rule166a1997.htm. (accessed May 8, 2026).

*Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). This legal-sufficiency review parallels the standard applied to directed verdicts. *Id*. at 750–51.

## 2    Construction of the 1937 deed

Esperanza claims ownership under the 1937 deed from Esperanza Livestock & Land Company to John F. Sinclair. Needmore contends the deed reserved a 1/32 mineral interest, stripped of the executive, bonus, and delay-rental rights but retaining the right to share in royalty, such that Esperanza is entitled to 1/32 of the landowner's royalty ($1/32 \times 1/6 = 1/192$ of gross production) under the Garner lease. The trial court adopted Needmore's construction, and so do we.

Deed construction follows contract-construction principles; when a deed is unambiguous, its construction is a question of law. *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991) (citing *Altman v. Blake*, 712 S.W.2d 117, 118 (Tex. 1986)). Our primary duty is to ascertain the parties' intent from the four corners of the instrument, harmonizing all provisions so that none is rendered meaningless. *Luckel*, 819 S.W.2d at 461–62. We do not view terms in isolation; instead, we give effect to all parts of the conveyance and construe the document as a whole. *Plainsman Trading Co. v. Crews*, 898 S.W.2d 786, 789 (Tex. 1995).

### 2.1    The deed's text denotes a mineral estate

The opening clause of the mineral reservation—reserving "an undivided One-Thirty-second (1/32) of all oil, gas and other minerals on, in and under said land"—uses a classic formulation for conveying a mineral estate. *See Altman*, 712 S.W.2d at 118 (treating a conveyance of an undivided 1/16 "in and to all the oil, gas and other minerals in and under and that may be

produced" as mineral-interest language). We have likewise repeatedly interpreted nearly identical "in and under" language as denoting a mineral estate, not a mere royalty interest. *Reed v. Maltsberger/Storey Ranch, LLC*, 534 S.W.3d 51, 63–64 (Tex. App.—San Antonio 2017, pet. denied); *Hamilton v. Morris Res., Ltd.*, 225 S.W.3d 336, 343 (Tex. App.—San Antonio 2007, pet. denied); *Garza v. Prolithic Energy Co., LP*, 195 S.W.3d 137, 142 (Tex. App.—San Antonio 2006, pet. denied).

Although distinguishing mineral interests from NPRIs is a "perennial problem" in Texas law, Laura H. Burney, *Oil, Gas, and Mineral Titles: Resolving Perennial Problems in the Shale Era*, 62 U. KAN. L. REV. 97, 100, 122 (2013), the deed language here is "neither unusual nor idiosyncratic," *see KCM Fin.*, 457 S.W.3d at 76. The deed employs standard "in and under" mineral-estate language rather than speaking in terms of "royalty" or "production," and thus indicates an interest in the minerals in place—with a corresponding share of the lessor's royalty—rather than a fixed share of gross production.

## 2.2 Attribute stripping confirms mineral-estate character

The clauses following the initial reservation sequentially strip away specific attributes of the mineral estate. The deed conveys to the grantee exclusive authority to execute leases, divesting the grantor of the executive right. It then provides that the grantor "shall not be entitled to share in any bonus money or delay rentals," removing bonus and delay-rental rights from the reserved interest.[8] That pattern—reservation of a mineral interest followed by carve-outs of the executive,

---

[8] The deed further states that the reserved interest "shall not be subject to any developing charges or expenses of any character incurred in connection with any such lease or leases." That language is consistent with the standard Texas rule that a lessor's royalty is cost-free as to drilling and production costs and is not personally liable for development expenses, which are chargeable to the working interest under a mineral lease. *See Hysaw*, 483 S.W.3d at 9–10. It is therefore consistent with both a mineral interest and a freestanding royalty interest: on its own, it does not evidence an intent to create an NPRI.

bonus, and delay-rental rights—matches the structure the supreme court has treated as creating a nonexecutive mineral interest rather than a pure royalty interest. *See French v. Chevron USA Inc.*, 896 S.W.2d 795, 797–98 (Tex. 1995); *Altman*, 712 S.W.2d at 118–19.

Under Texas law, the mineral estate is a bundle of five separate rights: (1) the right to develop; (2) the right to execute leases; (3) the right to receive bonus payments in consideration for the execution of a lease; (4) the right to receive delay rentals in consideration for postponing development; and (5) the right to receive royalties. *Hysaw*, 483 S.W.3d at 9 (citing *French*, 896 S.W.2d at 797–98). When an undivided mineral interest is conveyed or reserved, all five attributes are presumed to pass with it unless the instrument expresses a contrary intent, and each attribute may be severed into a separate interest.[9] *French*, 896 S.W.2d at 797; *Ridgefield Permian, LLC v. Diamondback E & P LLC*, 626 S.W.3d 357, 363 (Tex. App.—El Paso 2021, pet. denied). A single instrument may convey an undivided mineral interest and a separate royalty interest, and the royalty share may be larger or smaller than the mineral interest. *Hysaw*, 483 S.W.3d at 9.

In *Altman*, a 1930s deed conveyed an undivided 1/16 interest "in and under and that may be produced," granted ingress and egress to explore and develop, but excluded the grantee from rentals or leases. 712 S.W.2d at 117–18. The court held the interest was a mineral interest with certain attributes reserved; stripping those attributes did not convert it into a freestanding royalty interest. *Id*. at 118–19. In *French*, a deed granted an undivided fractional interest in minerals "in, under and that may be produced," while reserving the executive, bonus, and delay-rental rights and referred to the interest being conveyed as a "royalty interest." 896 S.W.2d at 796. Reading the instrument as a whole, the court held it conveyed a mineral interest, explaining that when a deed

---

[9] However, "the right to develop is a correlative right and passes with the executive rights." *French*, 896 S.W.2d at 797 n.1. The right to develop includes the right to "possess, use, and appropriate gas and oil" and the right to "prospect for, produce, and dispose of the minerals." *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 49 (Tex. 2017) (citation modified). Generally, the right to develop is what is conveyed in a mineral lease. *Id*.

grants an undivided mineral interest and then removes particular attributes, the result is a non-executive mineral interest with a floating royalty commensurate with that interest, not a fixed fraction of gross production. *Id*. at 797–98.

Under *Altman* and *French*, the 1937 deed's structure denotes a mineral interest stripped of the executive, bonus, and delay-rental rights but retaining the right to receive royalty payments. *Contrast Altman*, 712 S.W.2d at 118–19 (holding deed conveyed mineral fee where it contained mineral estate language combined with attribute stripping), *and Reed*, 534 S.W.3d at 57, 64 (stating that language stripping attributes of mineral estate "would be redundant because a royalty interest owner has no such rights," and analogizing the stripping language to removing the head and legs of a "mineral bug"), *with Watkins v. Slaughter*, 189 S.W.2d 699, 700–01 (Tex. 1945) (deed conveyed only royalty interest where it contained some mineral estate language but unequivocally labeled the conveyed interest as a royalty). In other words, the deed reserved a 1/32 "non-executive mineral interest." *See Lesley v. Veterans Land Bd. of State*, 352 S.W.3d 479, 487 (Tex. 2011) (using that label for a mineral interest stripped of the executive right).

### 2.3 Floating or fixed royalty

Having determined that the deed reserved a mineral interest, the remaining question is whether the associated royalty is fixed or floating. There is a presumption that royalty interests are proportionate to the mineral interest conveyed or reserved, absent clear language to the contrary. *See Patrick v. Barrett*, 734 S.W.2d 646, 648 (Tex. 1987) (citing *Benge v. Scharbauer*, 259 S.W.2d 166, 168–69 (Tex. 1953)).

The deed's minimum-royalty clause—requiring that "there must be retained by the Lessor a royalty of at least one-eighth (1/8)"—confirms that the grantor's share is tied to the lessor's

royalty, not to gross production. A fixed royalty is a constant fraction of gross production and, unlike a floating royalty, does not depend on the landowner's royalty reserved in a mineral lease. *U.S. Shale Energy II, LLC v. Laborde Props., L.P.*, 551 S.W.3d 148, 152–53 (Tex. 2018); *Hysaw*, 483 S.W.3d at 9–10. If the grantor had reserved a fixed 1/32 royalty measured against all production, the landowner's royalty fraction in future leases would be irrelevant, and the "at least one-eighth" language would serve no meaningful purpose. *See Garza*, 195 S.W.3d at 140, 146 (relying on "at least" one-eighth royalty clause to construe interest as a fraction-of-royalty interest); *see also Coghill v. Griffith*, 358 S.W.3d 834, 839–40 (Tex. App.—Tyler 2012, pet. denied) (same). Construing the deed as reserving a fixed 1/32 royalty would thus render the minimum-royalty clause surplusage, contrary to the rule that courts must, where possible, give effect to all provisions. *See Concord Oil Co. v. Pennzoil Expl. & Prod. Co.*, 966 S.W.2d 451, 460–61 (Tex. 1998); *Luckel*, 819 S.W.2d at 462–63; *Hysaw*, 483 S.W.3d at 12–13.

By contrast, under the mineral-reservation reading, the royalty payment is calculated as a fractional mineral interest multiplied by the landowner's royalty. *See* Laura H. Burney, *Interpreting Mineral and Royalty Deeds: The Legacy of the One-Eighth Royalty*, 33 ST. MARY'S L.J. 1, 11–17 (2001); Christopher S. Kulander, *Fixed vs. Floating Non-Participating Oil & Gas Royalty in Texas: And the Battles Rage On…*, 4 TEX. A&M L. REV. 41, 46–51 (2017). Under this view, the "at least 1/8" clause limits the executive leasing authority by requiring that the landowner's royalty never fall below 1/8. That requirement ensures that the grantor's 1/32 mineral interest always yields at least 1/256 (1/32 × 1/8) of production—and more if a higher royalty is negotiated. *See French*, 896 S.W.2d at 798; *Graham v. Prochaska*, 429 S.W.3d 650, 657 (Tex. App.—San Antonio 2013, pet. denied). This reading thus harmonizes the initial reservation, the

attribute-stripping language, and the minimum-royalty clause. *See Concord Oil*, 966 S.W.2d at 457–61; *Luckel*, 819 S.W.2d at 462–63.

We therefore conclude, consistent with the trial court's declaration, that the 1937 deed reserved a 1/32 non-executive mineral interest with a corresponding floating royalty interest. We next consider Esperanza's argument that, despite this construction, the presumed-grant doctrine vests them with a fixed 1/32 NPRI.

## 3    Presumed-grant doctrine

Esperanza contends that even if the deed's text points the other way, it acquired a fixed 1/32 NPRI under the presumed-grant doctrine. Relying on *Van Dyke v. Navigator Grp.*, 668 S.W.3d 353 (Tex. 2023) and *Clifton v. Johnson*, No. 23-0671, 2026 WL 705763 (Tex. Mar. 13, 2026), Esperanza argues that presumed grant is not confined to strictly possessory interests and that the parties' long-standing treatment of the Esperanza interest as a fixed 1/32 NPRI satisfies the doctrine. *Van Dyke* and *Clifton* confirm the doctrine's continued vitality, but they also highlight how demanding its elements are and how sparingly courts have invoked it. Even assuming the doctrine could apply to a royalty interest, Esperanza has not met its requirements.

### 3.1    The doctrine as a form of adverse possession or prescription

The presumed grant doctrine requires proof of: (1) a long-asserted and open claim, adverse to that of the apparent owner; (2) non-claim by the apparent owner; and (3) acquiescence by the apparent owner in the adverse claim. *Van Dyke*, 668 S.W.3d at 366; *Clifton*, 2026 WL 705763, at *5; *Magee v. Paul*, 221 S.W. 254, 256–57 (Tex. 1920).

In *Van Dyke*, the Texas Supreme Court described presumed grant—also called title by circumstantial evidence or the lost-grant fiction—as a "common law form of adverse possession" and, after deciding the case on deed construction, alternatively held that the presumed grant doctrine was satisfied by nearly a century of consistent, mutual actions by the parties treating each other as equal mineral cotenants. 668 S.W.3d at 366 (quoting *Fair v. Arp Club Lake, Inc.*, 437 S.W.3d 619, 626 (Tex. App.—Tyler 2014, no pet.)). *Clifton* emphasized that when the doctrine "clearly applies" a court may dispense with deed analysis entirely but expressly declined to decide whether the doctrine was satisfied, because applying it "would lead to the same result as [their] reading of the deed."[10] 2026 WL 705763, at *6.

The doctrine, however, did not originate with *Van Dyke* and *Clifton*. It hails from "the common law of England" which was officially adopted by the Texas Legislature in 1836 to the extent it is "not inconsistent with the constitution or the laws of this state." TEX. CIV. PRAC. & REM. CODE § 5.001(a). That background body of law continues to shape judge-made doctrines like presumed grant. *See Butler v. Collins*, 714 S.W.3d 562, 566–67 (Tex. 2025) (determining whether certain common law torts were abrogated by enactment of Texas Labor Code); *see generally* George C. Butte, *Early Development of Law and Equity in Texas*, 26 YALE L.J. 699, 700 (1917).

## 3.2 Presumed grant has never been extended to royalty interests

Presumed grant operates as an evidentiary presumption in cases involving long, uncontested dominion over land or a clearly exercised use. Esperanza's attempt to apply it to a royalty interest is novel. It cites no Texas decision presuming a grant of a royalty interest, and we

---

[10] *Clifton* appears to suggest that presumed grant might, in theory, be invoked in disputes involving pure royalty interests and sketches in general terms how such an analysis could proceed, but it ultimately declines to apply the doctrine and expressly leaves its scope in the royalty context unresolved. *See Clifton*, 2026 WL 705763, at *6.

have found none. *Cf. Magee*, 221 S.W. at 256–57 (recognizing presumed grant where long-continued possession made it unreasonable to deny a grant); *United States v. Chaves*, 159 U.S. 452, 462–64 (1895) (explaining English "lost grant" fiction as a way to quiet long-enjoyed possession or use); *Fair*, 437 S.W.3d at 626–27 (observing that all Texas cases applying presumed grant involved title to real property, rather than a subsidiary right like possession). Nor have we located a reported decision in any other American or English jurisdiction applying presumed grant to alter a royalty interest or a comparable passive-income interest in land. *Cf. Van Dyke*, 668 S.W.3d at 366 (presuming a grant of a mineral interest).

The common law has long recognized that interests in property may pass by possession or use rather than a conveyance from the record titleholder. *See* 2 William Blackstone, *Commentaries* *262–66. For possessory—or corporeal—interests, adverse possession can ripen into full ownership, with the extent of the estate determined by the possessor's claim and actual possession. *See, e.g., Nat. Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192–93 (Tex. 2003) (observing that when a mineral estate has been severed, "actual possession of the minerals must occur" to prove adverse possession); Henry W. Ballantine, *Title by Adverse Possession*, 32 HARV. L. REV. 135, 142–44 (1918). For nonpossessory—incorporeal—interests, such as easements and profits, long-continued use may ripen into a prescriptive title. *See Albert v. Fort Worth & W. R.R. Co.*, 690 S.W.3d 92, 97–98 (Tex. 2024) (per curiam) (discussing prescriptive easements)[11]; *Bland Lake Fishing & Hunting Club v. Fisher*, 311 S.W.2d 710, 715 (Tex. App.—Beaumont 1958, no writ) (acknowledging that profits à prendre may be created "by grant or prescription").

---

[11] The Texas law of prescriptive easements itself derives from the presumed grant doctrine. *See City of Austin v. Hall*, 57 S.W. 563, 564 (Tex. 1900) ("A right claimed by prescription rests upon the presumption that the owner of the land has granted the easement, and the grant has been lost."); *Rhodes v. Whitehead*, 27 Tex. 304, 312 (1863) ("[A] title by prescription is a mere presumption made by the law upon a given state of facts in furtherance of public policy, or to accomplish the ends of justice.").

The presumed-grant doctrine fits into this tradition as a "rule of evidence" that allows courts to presume that some grant must have been made. *See* Jerome J. Curtis, Jr., *Reviving the Lost Grant*, 23 REAL PROP. PROB. & TR. J. 535, 539 (1988); *see also Lewis v. City of San Antonio*, 7 Tex. 288, 306–08 (1851) (tracing common law origins of prescription and presumed-grant theories and applying presumed-grant as an "evidence" rule). English courts developed the doctrine to cure defects in ancient titles where parties had used or enjoyed property without an identifiable conveyance for at least 20 years, presuming that a conveyance once existed but had been lost. *Chaves*, 159 U.S. at 462–64; Alan Dowling, *The Doctrine of Lost Modern Grant*, 38 IRISH JURIST 225, 226 n.15, 227–29 (2003). Texas courts have similarly recognized presumed grant where long-continued possession makes it unreasonable to deny the existence of a grant.[12, 13] *Howland v. Hough*, 570 S.W.2d 876, 880 (Tex. 1978); *Magee*, 221 S.W. at 256–57; *Purnell v. Gulihur*, 339 S.W.2d 86, 92 (Tex. App.—El Paso 1960, writ ref'd n.r.e.).

A royalty interest does not resemble the interests previously considered. It is an incorporeal interest under Texas law, *Haile v. Holtzclaw*, 414 S.W.2d 916, 923 (Tex. 1967), but—unlike easements or profits—it neither burdens land with the royalty owner's use nor confers a right to enter or possess, *Hysaw*, 483 S.W.3d at 9. Instead, a royalty is akin to common-law "rent": an incorporeal hereditament reserved in a conveyance that entitles the grantor to payments based on the grantee's possessory activity. *See* 2 William Blackstone, *Commentaries* *41–43; *see also*

---

[12] There is some debate about whether presumed grant creates a presumption of fact or of law. English courts have generally applied it as a presumption of fact that may be rebutted by showing that a valid conveyance could not have occurred. Dowling, *supra*, at 230–32; *see also Lewis*, 7 Tex. at 304 ("It appears, therefore, to be well settled in the English courts that a grant will be presumed from lapse of time when it is to support a right in possession and long enjoyed; and the only qualification to the rule seems to be, that it must not appear that a valid grant could not have been made.").

[13] The period of "long" possession or use was 20 years in England, by analogy to the Limitations Act of 1623. *Lewis*, 7 Tex. at 307. The United States Supreme Court has opined that the necessary length of time "is not definite" and "depend[s] on its peculiar circumstances." *Mitchel v. United States*, 34 U.S. 711, 760 (1835). Texas has adopted no bright-line rule.

*Denio v. City of Huntington Beach*, 22 Cal. 2d 580, 596 (1943) (observing that "royalty" may be used interchangeably with "rent"); 3 Tiffany, Real Property §§ 876, 880 (3d ed. 1939) (contrasting "rent" with a profit à prendre, the latter of which is "taken by the person entitled thereto, without the active intervention" of the leaseholder).

There appears to be no English or American case in which a right to receive rent has been acquired by presumed grant. That absence fits the logic of the doctrine. To presume a grant, the claimant must show a long-asserted, open, and adverse claim to the property. *Van Dyke*, 668 S.W.3d at 366. Those elements can be readily satisfied for corporeal interests in land, where physical possession can signal a claim of right, and for use-based incorporeal interests like easements or profits, where visible, continuous use functions the same way. The doctrine fits poorly, however, with the passive receipt of rent or royalties. A would-be claimant to rent or royalties does not possess or use the land; payments are made based on the *lessee*'s decision to possess or exploit the property. Nonpayment or miscalculated payment may reflect breach or mistake by the lessee, but does not, on its own, amount to an "open, adverse claim" by the *recipient* of those payments.[14]

Stepping back, the broader jurisprudence points in the same direction. A mineral estate is a possessory interest in minerals in place and is subject to adverse possession. *See Pool*, 124 S.W.3d at 192–93. A royalty interest, by contrast, is "a nonpossessory interest to which the rules regarding adverse possession" do not apply. *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 733 n.6 (Tex. 1981). An oft-recognized justification for adverse possession and prescription is that the

---

[14] There is, by contrast, a line of English cases using the presumed grant doctrine to preserve, rather than create, rent obligations where rent has long been paid by someone other than the original obligor. *Adnam v. Earl of Sandwich*, (1877) 2 Q.B.D. 485 (rejecting claim that a rent-charge was extinguished despite decades of payment by someone other than the landowner); *Eldridge v. Knott*, (1774) 1 Cowp. 214 (KB) (refusing to apply presumed grant to extinguish feudal quit-rent obligation based upon thirty-six years of nonpayment because fifty-year limitation period had not expired).

possessor who puts land to beneficial use should have superior title over an absent, passive owner. James Gordley, *Foundations of Private Law* 141 (2006). Extending these doctrines to apply to a purely passive, non-productive interest in land is inconsistent with this justification, and would encourage careful auditing of royalty checks, not beneficial use of land.

The Texas Supreme Court has rejected similar attempts to convert a long history of overpayments into a right to continue receiving the overage. In *Sun Oil*, the lessees had overpaid royalties for more than forty years; when they corrected the error, the lessors invoked adverse possession and equitable doctrines to prevent a return to the contractual rate. 626 S.W.2d at 733–34. The court held that past overpayments "d[id] not create a right in [the royalty owners] to continue receiving such payments in perpetuity," refused to enlarge the royalty interest beyond the written agreement via adverse possession, and rejected the lessors' ratification and estoppel arguments. *Id*. at 734. Using presumed grant to freeze a fixed royalty based on historical overpayments would present the same concerns under a different doctrinal label.

In short, no Texas court has extended presumed grant to change the character of a royalty interest or to transform a mineral interest or floating royalty into a fixed royalty, and the doctrine's common-law foundations offer little support for doing so here. The public depends on settled expectations of property law, and extending presumed grant in the way Esperanza proposes—without precedent and without a sound fit with the doctrine's justifications—would undermine that stability.

## 3.3 There is no evidence of an "open claim"

Even if we were to extend the doctrine as Esperanza urges, there is no genuine issue of material fact on the open claim element. Presumed grant's first requirement is a "long-asserted and

open claim, adverse to that of the apparent owner." *Van Dyke*, 668 S.W.3d at 366 (quoting *Magee*, 221 S.W. at 257). Esperanza's motion points to division orders reflecting a fixed 1/32 share of production, correspondence and deposition testimony from members of the Garner family (and their successors) acknowledging that fixed interest, and conveyances in the Garners' chain of title reciting the Esperanza interest as a "1/32 NPRI." This evidence shows how operators and the Garners described and accounted for the interest; it does not show that Esperanza themselves ever openly asserted a hostile claim to a fixed royalty against the apparent owner.

After the Esperanza Company dissolved, the successors were largely absent until the 1992 litigation. In that litigation, the Esperanza Successors' pleadings asserted "title and ownership" of "the 1/32nd mineral interest reserved to Esperanza Live Stock and Land Company in its Deed to John F. Sinclair," and the final judgment similarly recognized them as owning a "1/32nd mineral interest." The Esperanza Successors were again passive with respect to this interest between the 1992 litigation and this suit.

"Satisfying the [presumed-grant] doctrine is properly difficult." *Van Dyke*, 668 S.W.3d at 366. Presumed grant developed to reconcile record title with long-asserted, open claims to possessory or use-based interests, not to lock-in a higher royalty payment by passive acceptance of royalty checks. The division orders, deed recitals, and overpayments cited as evidence of an open claim are, at most, evidence of mistaken construction by the Garners and the operators; standing alone, they are not the kind of visible, hostile "claim of right" that presumed grant requires. *See Fair*, 437 S.W.3d at 627 (finding no evidence of a "long asserted and open claim" despite nonclaim by titleholder). Esperanza has failed to raise a fact-issue precluding no-evidence summary judgment. *See King Ranch*, 118 S.W.3d at 751. Esperanza's first issue is overruled.

## 4    Affirmative defenses

Having rejected Esperanza's presumed-grant theory, we turn to its affirmative defenses—laches, estoppel by deed, quasi-estoppel, waiver, and ratification—which it contends nevertheless bar Needmore's claims and preserve a fixed 1/32 royalty.

### 4.1   Laches

Laches is an equitable doctrine that may bar a claim when (1) the claimant unreasonably delays asserting a known right and (2) another party, in good faith, changes position to its detriment because of that delay. *See Yzaguirre v. KCS Res., Inc.*, 47 S.W.3d 532, 541 (Tex. App.—Dallas 2000), *aff'd*, 53 S.W.3d 368 (Tex. 2001); *Thompson v. Landry*, 713 S.W.3d 372, 380 (Tex. 2025). It is an equitable defense and has typically only applied in suits seeking equitable relief. *Houston Lighting & Power Co. v. City of Wharton*, 101 S.W.3d 633, 638 (Tex. App.—Houston [1st Dist.] 2003, pet. denied). Declaratory judgment actions, however, are "'neither legal nor equitable, but sui generis'," *Allstate Ins. Co. v. Irwin*, 627 S.W.3d 263, 269 (Tex. 2021) (quoting *Cobb v. Harrington*, 190 S.W.2d 709, 713 (Tex. 1945)), and Texas courts have questioned whether laches applies to such claims at all. *See Bookout v. Shelley*, No. 02-22-00055-CV, 2022 WL 17173526, at *27 (Tex. App.—Fort Worth Nov. 23, 2022, no pet.) (mem. op.).

Here, the underlying action seeks a declaration interpreting a deed. We need not decide whether laches may apply to a declaratory judgment action of this kind, because even assuming it does, Esperanza produced no more than a scintilla of evidence on the detrimental-reliance element.

In response to Needmore's no-evidence motion, Esperanza asserted (1) that relevant witnesses are no longer available and (2) that circumstances have materially changed. The first contention rests solely on bare assertions that unspecified witnesses are unavailable. Conclusory

statements do not raise a fact issue on summary judgment. *BP Am. Prod. Co. v. Zaffirini*, 419 S.W.3d 485, 507 (Tex. App.—San Antonio 2013, pet. denied). Moreover, Esperanza does not contend that necessary documents have been lost or destroyed, and laches has been rejected where "there was no showing that the records were unavailable." *See Wakefield v. Bevly*, 704 S.W.2d 339, 345 (Tex. App.—Corpus Christi–Edinburg 1985, no writ).

As to "changed circumstances," Esperanza argues that its interest has become "highly fractionalized" and that the value of that interest "would be damaged if [Needmore is] permitted to challenge its nature." That describes the economic impact of an adverse judgment, not a change of position taken in reliance on Needmore's delay. *See Bookout*, 2022 WL 17173526, at *27 (holding that continuing to act as before does not establish the "change of position" laches requires). Esperanza also does not explain how accepting royalty payments calculated at approximately six times the rate the deed provides for is "detrimental" to it; if anything, the delay allowed it to receive inflated payments for longer.

On this record, there is no evidence of the kind of good-faith, detrimental reliance laches requires. The trial court therefore did not err in granting Needmore's motion for summary judgment on laches.

## 4.2   Remaining affirmative defenses

Estoppel by deed "stands for the proposition that all parties to a deed are bound by the recitals in it, which operate as an estoppel," and it precludes a party from alleging title in derogation of the deed or denying the truth of any material fact it recites. *Trial v. Dragon*, 593 S.W.3d 313, 318 (Tex. 2019). Esperanza relies on language in later conveyances in the Garner chain of title that describe the Esperanza interest as a "1/32 non-participating royalty interest" or as "1/32 of 8/8" of

production and argues those recitals estop Needmore from contending that the 1937 deed reserved a non-executive mineral interest with a floating royalty. But estoppel by deed runs between the parties to a deed and their privies. Strangers to the deed are "not, generally speaking, entitled to invoke estoppel-by-deed against the document's signatories." *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 337 (Tex. 2020). Because Esperanza was not a party or privy to the Garners' conveyances, it cannot invoke estoppel by deed based on recitals contained in those deeds.

Quasi-estoppel, waiver, and ratification are likewise unavailing. Quasi-estoppel prevents a party from taking a position inconsistent with a prior position when allowing the change would be unconscionable because the other party has been disadvantaged. *Id*. Waiver is "the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right," and requires an existing right, actual knowledge, and actual intent to relinquish it or conduct inconsistent with an intent to assert it. *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008) (citing *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996)).

We have already concluded that the 1937 deed reserved a 1/32 non-executive mineral interest, not a fixed 1/32 NPRI. Quasi-estoppel and waiver cannot create rights that the deed does not grant. *Hruska v. First State Bank of Deanville*, 747 S.W.2d 783, 785 (Tex. 1988). Esperanza points to division orders, indemnity agreements between the Garners and operators, and recitals and testimony from the Garners that they believed the Esperanza interest was a fixed NPRI. But division orders "provide a procedure for distributing the proceeds of sale of oil and gas" and "do not rewrite or supplant leases or deeds." *Gavenda v. Strata Energy, Inc.*, 705 S.W.2d 690, 691 (Tex. 1986). The indemnity agreements and Garner recitals likewise do not purport to convey anything to Esperanza; they simply reflect what those parties thought the 1937 deed reserved.

Quasi-estoppel and waiver cannot turn those documents into conveyances or a right to continued royalty overpayments beyond what the deed provided, even if they embody a long-standing misunderstanding of that deed. *See Sun Oil*, 626 S.W.2d at 734 (rejecting estoppel, ratification, and waiver arguments after forty years of overpayments).

Ratification is also inapplicable, though for a slightly different reason. Ratification occurs when a party with full knowledge of all material facts confirms or adopts an earlier act that did not legally bind it and that it could have repudiated. *See ConocoPhillips Co. v. Hahn*, 704 S.W.3d 515, 525 (Tex. 2024). Esperanza has pointed to no "earlier act" that purported (though ineffectually) to convey a fixed NPRI to Esperanza that later division orders or the Garners' statements could ratify. *See Hahn*, 704 S.W.3d at 525; *Sun Oil*, 626 S.W.2d at 734.

On this record, Esperanza did not raise a genuine issue of material fact on any of its affirmative defenses, and those defenses cannot, as a matter of law, enlarge the reserved interest beyond what the 1937 deed provides. The trial court correctly granted summary judgment on these affirmative defenses. Esperanza's second and third issues are overruled.

## 5  Other issues raised by Esperanza

In its fourth and fifth issues, Esperanza contends that (1) a remand would be required to address its counterclaims and cross-claims against the operators if we were to hold its interest is a fixed 1/32 NPRI and (2) summary judgment should have been granted denying Needmore's res judicata arguments. Because we do not construe the Esperanza interest as a fixed 1/32 NPRI and have already concluded that declaratory relief in Needmore's favor is proper without reaching Needmore's alternative res judicata ground, we need not address these contentions. *See* TEX. R. APP. P. 47.1.

**CONCLUSION**

The 1937 deed, properly construed, reserved a 1/32 non-executive mineral interest. Esperanza's presumed-grant and equitable defenses do not apply here. We affirm the trial court's judgment.


Velia J. Meza, Justice